UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY S. BAKER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:13 CV 1334 RWS |
| | ) | |
| TISHAURA O. JONES, | ) | |
| | ) | |
| Defendant, | ) | |

# **MEMORANDUM AND ORDER**

Defendant Tishaura Jones was elected Treasurer of the City of St. Louis in November 2012. Shortly after taking office, Jones terminated the employment of three Treasurer's Office employees, Plaintiffs Anthony Baker, Thomas Stoff, and Andre Broussard. Plaintiffs allege that their terminations were based on their political affiliations in violation of the First and Fourteenth Amendments to the United States Constitution. Jones has moved for summary judgment based on Plaintiffs' failure to provide evidence in support of their claims. Because Plaintiffs have failed to submit evidence which would establish their claims I will grant Jones' motion for summary judgment.

*Background*[1]

On August 7, 2012, Defendant Jones won the Democratic primary election for the position of Treasurer of the City of St. Louis. She won the general election for Treasurer in November 2012 and assumed the office of Treasurer on January 2, 2013. In her primary campaign, Jones promised to introduce "real change and transparency" into the Treasurer's Offfice which had developed a reputation for waste and nepotism. [Doc. # 45, Def.'s Satement of Uncontroverted Facts ¶ 3] In particular, Jones vowed to change the structure of the Parking Division to one that was more accountable and efficient and to increase the professionalism of the Office. [Id. at ¶ 4]

In addition to other duties, the Treasurer serves as the Parking Supervisor of the Parking Division of the City of St. Louis. At the time Jones assumed her position, the Parking Division was divided into three functions: on-street parking, which involved supervising parking meters; off-street parking, which involved the city's parking garages; and parking enforcement.

Between the time Jones won the general election and the day she assumed her office, she made frequent visits to the Treasurer's Office to make initial assessments of improving operations. She met with many employees and

---

[1] The background information is taken from the portions of Defendant's Statement of Undisputed Facts which were not challenged by Plaintiffs.

identified the specific processes and organizational changes she would need to make to fulfill her campaign promises of improving the functions of the Office.

Plaintiffs worked in the Parking Division. Plaintiffs Stoff and Baker were both Assistant Treasurers, reporting directly to the Treasurer. They were responsible for the operations and management of the Parking Division and were the highest paid employees of the Treasurer's Office. Baker had been employed by the Office for almost thirty years and Stoff for almost twenty years at the time their employment was terminated.

In his first year of employment, Stoff was a legislative representative of the Office. Although he only retained that title for a year he remained responsible for reviewing legislation, making recommendations, and reporting to the Treasurer regarding legislative issues until his termination. Stoff provided lobbying services for the Office and advised the former Treasurer regarding legislation that was proposed at the city and state level and frequently traveled to Jefferson City to perform these duties. Stoff assisted the former Treasurer in developing the Office's positions on policies which Stoff advocated on the city and state level. Stoff interacted with media and local businesses and stakeholders on behalf of the Office. In addition, Stoff also supervised the parking enforcement operations and met routinely with other Parking Division employees and with representatives of

the private company performing parking meter duties (which had been outsourced) to address issues of concern in the operation of the Office.

Plaintiff Baker was charged with the supervision of off-street parking garages acquired and developed with Baker's assistance through public-private parking ventures. Although Stoff purportedly supervised the on-street parking functions, Baker and Stoff contradicted one another in their depositions, each declaring that the other had responsibility for reviewing the monthly billings and oversight of the third-party companies to which certain on-street parking meter functions had been outsourced. Baker also interacted with city officials on behalf of the Office. Baker worked with the Office's legal counsel in creating special tax increment finance districts for the development of parking garages. He was involved in the financial planning of the Office and helped develop long-term projects. He also acted as the project manager to privatize the parking violation collections system for the city, which entailed him meeting with stakeholders from the police department, Parking Division, and the mayor's office. In addition, Baker and Stoff met frequently with the former Treasurer, developed budgets, and answered constituents on behalf of the Office.

When Jones met with Stoff and Baker before she assumed her office, she discovered that although they were responsible for the operations and management of the Parking Division, both lacked accountability for the various responsibilities

of the Parking Division. She also learned that there were several layers of operational employees separately reporting to Baker and Stoff who were not fully utilized. One issue Jones identified in the fall of 2012 was the theft of $60,000 skimmed from the receipts of a parking garage. This theft had occurred over several months due to the lack of oversight of the garage operations and due to inadequate documentation by Stoff and Baker. In addition, multiple ghost employees were on the payroll of Dankar, the company handling the outsourced on-street parking functions, and a sham consulting contract was entered between this company and the Office for legislative monitoring, reporting and advocacy. Stoff claims that the bills for work performed by third-party contractors like Dankar had been routinely sent to Baker for review and authorization before payment. One ghost employee, Fred Robinson, who was indicted in federal court for accepting a salary from the Office without showing up for work, was responsible for on-street parking enforcement. Both Stoff and Baker denied any responsibility for Robinson.

Plaintiff Andre Broussard served in the position of Assistant to the Treasurer, a position Jones found redundant because there was also the position of Executive Assistant to the Treasurer in the Office. Broussard stated in his deposition that he would sit in on meetings at which the former Treasurer would develop his positions or strategies with regard to requests from local bureaus,

agencies, or authorities. Broussard asserted that he often made public appearances on behalf of the former Treasurer and gave speeches at events and meetings with alderman and other local agencies. When Broussard gave speeches, they were often the result of a collaborative effort between himself, the former Treasurer, and Stoff. At some of these meetings he would advocate a position on a political issue. He acted as a conduit by relaying information between the former Treasurer and constituents. He also gave media interviews on behalf of the Office. At least some of these interviews concerned the implementation of a parking ticket amnesty initiative Broussard claims to have spearheaded. However, during Jones' initial visits to the Office, and in her first two weeks after beginning her term, she never observed Broussard actually working.

In her assessment of the Office, Jones reviewed a state audit report performed in approximately 2008 or 2009 which stated that management in the Office did not consistently enforce policies, and that the Office had too many employees for the amount of work it needed to accomplish. Because Jones believed that Stoff and Baker had permitted the wasteful processes associated with the Office to persist for many years, she believed that they did not possess the strategic vision or possess the professionalism she sought to instill in the Office. Jones did not feel comfortable with Broussard performing his duties for the Office. As a result of her meetings with Plaintiffs, and her observations during her initial

visits and after assuming office, and her analysis of the organization of the Office and Parking Division, Jones decided to eliminate Stoff's, Baker's, and Broussard's positions. Their employment was terminated on January 17, 2013, a little over two weeks after she assumed her office. Jones viewed Broussard's position as redundant to the Executive Assistant's position. Jones also re-organized the Parking Division the Assistant Treasurer's positions held by Stoff and Baker. These positions were consolidated into the executive position of Parking Administrator who was responsible for all on-street and off-street operations. Jones hired a person for that position who had experience as a parking administrator and who had an understanding of the entire parking operation. Jones' reorganization of the Office resulted in a permanent reduction in the number of employees.

Plaintiffs assert that they were fired by Jones, in violation of their constitutional rights, for supporting three different candidates running against Jones in the Democratic primary. Jones denies that she had any knowledge of who they supported in the election and moves for summary judgment.

### *Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

7

law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Analysis*

The dismissal of a public employee from his job based solely on account of his political affiliation violates the First Amendment "unless the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Langley v. Hot Spring County, Ark., 393 F.3d 814, 817 (8th Cir. 2005) (internal quotes and citation omitted). To establish such a claim a plaintiff must establish that his political affiliation was a motivating factor. He need not establish it was the sole factor. Id. At the

summary judgment stage of a political affiliation claim, the district judge must determine whether the "plaintiff has submitted sufficient evidence that political affiliation or loyalty was a motivating factor in the dismissal." Id. If the plaintiff meets this burden, the defendant may still be entitled to summary judgment if she establishes "*either* that the political motive is an appropriate requirement for the job, *or* that the dismissal was made for mixed motives and the plaintiff would have been discharged in any event." Id. The simple fact that a newly–elected official terminates the employment of one or more at-will employees does not by itself prove a bad motive. Id. (in Langley the plaintiff was fired within a few weeks after defendant's election to office). If the official lacks confidence in her assistants that she inherited from the prior administration, she is free to terminate their employment for reasons other than their political affiliation. Id. at 817.

All three Plaintiffs in the present matter have failed to produce sufficient evidence that Jones fired them because they supported candidates other that Jones in the primary election. Jones has submitted an affidavit which states that when she made the decision to eliminate Plaintiffs' positions, she did not know which candidates Plaintiffs supported in the 2012 primary election for Treasurer. Nor was she aware of any actions allegedly taken by Plaintiffs in support of any candidates.

9

In support of his claim, Broussard asserts that he supported candidate Jeffrey Boyd for Treasurer. Broussard's support was limited to placing a Boyd sign on the yard of his home, attending fundraisers, and occasionally speaking to Boyd in Broussard's office. Broussard believes Jones knew of his support for Boyd based solely on the fact that a friend, Les Bond, was aware of Broussard's support and Bond also happened to be friends with Virvus Jones, Treasurer Jones' father. This evidence is purely speculative and conjecture. Broussard has not produced any evidence from Bond or Jones in support of this belief.

Likewise, Stoff's evidence to support his claim is based on speculation and conjecture. He supported candidate Fred Wessels in the primary. His support included talking with Wessels from time to time about how the office may function under Wessels and bringing several members of Stoff's family to an 8th Ward meeting to vote and secure the endorsement of the Ward for Wessels. He claims that Jones would have been aware of his activities because St. Louis is a small town and someone would have told Jones of Stoff's activities in support of Wessels.

Baker alleges that he supported candidate Brian Wahby for Treasurer. The only work he did for the campaign was to place a yard sign on his lawn and persuade contractors who worked on the city parking garages that he did business with to contribute to Wahby. Baker believes that Jones must have been aware the

Baker supported Wahby because it was Baker's belief that Jones' father Virvus Jones knew that Baker and Wahby were cousins. In addition, Baker stated that he heard that Jones did some "forensic accounting" on Wahby's financial disclosures to see who contributed to his campaign. Although Baker did not contribute money to Wahby, he surmises that Jones would recognize the contractors names and guess that Baker must had persuaded them to donate to Wahby's campaign. Like Stoff's and Broussard's evidence, this evidence is purely based on speculation and conjecture.

The undisputed evidence in this case is that Jones sought to reform what she saw as abuses and mismanagement of the Parking Division of the Treasurer's Office. She frequently visited the Office after the election and before she officially began her term in office. She met with Plaintiffs, and other employees, to discuss their job functions. She uncovered a lack of accountability and clarity in Plaintiffs regarding their responsibilities. During her visits and in her first two weeks in office she witnessed first–hand the inefficiencies in the office. Based on the evidence in the record, Jones had legitimate grounds to eliminate Plaintiffs' positions. She found Broussard's position to be redundant and unnecessary. She believed that Stoff and Baker had failed in their supervision of their respective positions. She reorganized the Parking Division to be managed more effectively.

Plaintiffs have not provided sufficient evidence to support their claims that their political affiliations were a motivating factor for their terminations.

Moreover, even if Jones' decision was based on political loyalty, her decision to eliminate Plaintiffs' positions would not violate Plaintiffs' constitutional rights. When a position involves a policymaking or a confidential relationship with an elected official, the official may replace an inherited employee with a person who is personally loyal to the official. "Personal loyalty is an appropriate requirement where the individual reports directly to the [chief executive] and his duties include public relations and responsibilities for long-range planning." Id. at 818 (internal quotations and citation omitted).

All three Plaintiffs in this matter occupied confidential relationship positions with the Treasurer, reported directly to the Treasurer, and their duties included public relations. Stoff lobbied on behalf of the Treasurer's Office and advised the former Treasurer regarding legislation that was proposed at the city and state level. He assisted the former Treasurer in developing the Office's positions on policies which Stoff advocated on the city and state level. Stoff also interacted with media and local businesses and stakeholders on behalf of the Office.

Baker interacted with city officials on behalf of the Office. He worked with the Office's legal counsel in creating special tax increment finance districts for the development of parking garages. He was involved in the financial planning of the

Office and helped develop long-term projects. In addition, both Baker and Stoff met frequently with the former Treasurer, developed budgets, and answered constituents on behalf of the Office.

Broussard held himself out to be a confidant of the former treasurer. He would sit in on meetings at which the former Treasurer would develop his positions or strategies with regard to requests from local bureaus, agencies, or authorities. Broussard asserts that he often made public appearances on behalf of the former Treasurer and gave speeches at events and meetings with alderman and other local agencies. When Broussard gave speeches, they were often the result of a collaborative effort between himself, the former Treasurer, and Stoff. At some of these meetings he would advocate a position on a political issue. He acted as a conduit by relaying information between the former Treasurer and constituents. He also gave media interviews on behalf of the Office.

If Plaintiffs' had retained their positions the expectation would be that they would have the same types of duties and maintain the same type of confidential relationship positions with the new Treasurer that they had with the former Treasurer.

In their opposition to summary judgment Plaintiffs argue that their termination a little over two weeks after Jones began her term supports their claim that they were fired based on their political activity. However, generally, more

than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on an improper motive claim like retaliation. Putman v. Unity Health System, 348 F.3d 732, 737 (8th Cir. 2003)(quotations and citations omitted). The undisputed evidence is that Jones was gathering information about Plaintiffs in her visits to the Office in the two months before she took office. She obtained more information about Plaintiffs performance in her first weeks on the job. Plaintiffs have not presented any evidence to counter the undisputed fact that Jones lacked confidence in Plaintiffs whom she inherited from the prior administration, and that she terminated their employment for reasons other than their political affiliation. See Langley, 393 F.3d at 817. In an additional effort to avoid summary judgment, Plaintiffs assert that their "positions did not have any inherent duties or responsibilities but, rather, what Plaintiffs did was flexible and directed at the whim of the Treasurer." [Doc. # 52, Pls.' Resp. to Def.'s Statement of Uncontroverted Facts at 25, ¶ 8] This assertion is highly suspect. It also contradicts what Plaintiffs described as their duties in their depositions. It is disingenuous to assert that the top supervisors (Baker and Stoff) of the Parking Division and the Assistant to the Treasurer did not have any inherent duties or responsibilities.

As a result of the undisputed record before me, I find that Defendant Jones is entitled to summary judgment on Plaintiffs' claims.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Tashaura Jones' motion for summary judgment [43] is **GRANTED**.

**IT IS FURTHER ORDERED that** the parties' consent motion for a trial date certain [55] is **DENIED** as moot.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 4th day of September, 2015.